Matthew J. Langley (California Bar No. 342846)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
T: (312) 576-3024
E: matt@almeidalawgroup.com

*Counsel for Plaintiffs & the Proposed Class*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN NEU and KEEFE JOHN, *individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>COINBASE GLOBAL, INC. and COINBASE, INC.,<br><br>Defendants. | Case No.: 3:25-cv-4243<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Benjamin Neu and Keefe John, individually and on behalf of all similarly situated persons, allege the following against Coinbase Global, Inc. and its subsidiary Coinbase, Inc. (collectively, "Coinbase" or "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by their counsel and review of public documents as to all other matters:

## INTRODUCTION

1. Plaintiffs bring this class action against Coinbase for its failure to properly secure and safeguard Plaintiffs' and Class Members' personally identifiable information from cybercriminals.

2. On May 15, 2025, Coinbase announced via an 8-K filing with the United States Securities and Exchange Commission ("SEC") that an unnamed threat actor claimed (via a May 11, 2025 email) to have obtained information regarding Coinbase customers including their

names, addresses, phone numbers, email addresses, last four digits of social security numbers, Coinbase account information, bank account information, governmental-ID images, and account data, among other personal information (collectively, the "PII") from Coinbase's inadequately protected network servers (the "Data Breach").

3. The cybercriminals "obtained this information by paying multiple contractors or employees working in support roles outside the United States to collect information from internal Coinbase systems to which they had access in order to perform their job responsibilities. These instances of such personnel accessing data without business need were independently detected by [Coinbase's] security monitoring in the previous months."[1]

4. While Defendants claim to have discovered the breach as early as May 11, 2025, Representative Plaintiffs and Class Members were wholly unaware of the Data Breach until they learned of it in the media on May 15, 2025.

5. Coinbase is a leading cryptocurrency exchange boasting a trading volume of $468 billion.[2] Its stated purpose is to "increase economic freedom in the world" by "updat[ing] the century-old financial system by providing a trusted platform" to trade cryptocurrencies.[3]

6. Coinbase, as a substantial business, had the resources to take seriously the obligation to protect its customers' private information. However, Coinbase failed to invest the resources necessary to protect the PII of Plaintiffs and Class members.

7. The actions of Coinbase related to this Data Breach are unconscionable. Upon information and belief, Coinbase failed to implement practices and systems to mitigate against the risks posed by Coinbase's negligent (if not reckless) IT practices. As a result of these failures,

---

[1] *See* https://www.coinbase.com/blog/protecting-our-customers-standing-up-to-extortionists (last accessed May 15, 2025).

[2] Coinbase Global, Inc., *Annual Report* (Form 10-K) at 7 (February 13, 2025), https://investor.coinbase.com/financials/sec-filings/default.aspx.

[3] *Id*. at 8.

Plaintiffs and Class members face a litany of harms that accompany data breaches of this magnitude and severity.

8. As such, Plaintiffs, on behalf of themselves and all others similarly situated, bring this Action for restitution, actual damages, nominal damages, statutory damages, injunctive relief, disgorgement of profits and all other relief that this Court deems just and proper.

9. Though Coinbase continues to claim that "security and transparency are core to Coinbase," it provides a paltry amount of information concerning the Data Breach on its website, and does not position impacted individuals to protect themselves against fraud and identity theft. Indeed, it is clear that Coinbase customers (and perhaps others) have already experienced the fallout of the Data Breach. Coinbase acknowledged that "cybercriminals bribed and recruited a group of rogue overseas support agents to steal Coinbase customer data to facilitate social engineering attacks . . . . [and] to gather a customer list they could contact while pretending to be Coinbase—tricking people into handing over their crypto. They then tried to extort Coinbase for $20 million to cover this up."[4]

10. Coinbase stated that it is "continuing to review and bolster its anti-fraud protections to mitigate the risk that the compromised information could be used in social-engineering attempts. To the extent any eligible retail customers previously sent funds to the threat actor as a direct result" of the Data Breach, Coinbase "intends to voluntarily reimburse them after it completes its review to confirm the facts.[5]

11. While the financial impact is still being assessed and Coinbase hasn't revealed how many customers were deceived into sending funds to the cybercriminals in follow-up social engineering attacks, the company estimates that the resulting expenses will be "within the range of approximately $180 million to $400 million" for remediation and customer reimbursements.[6]

---

[4] *See* https://www.coinbase.com/blog/protecting-our-customers-standing-up-to-extortionists.
[5] *See id.*
[6] *See id.*

12. Therefore, Plaintiffs and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their PII, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

13. Plaintiffs bring this class action lawsuit to address Coinbase's inadequate safeguarding of Class Members' PII that it collected and maintained.

14. The Data Breach is a direct result of Coinbase's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect individuals' PII with which it was entrusted.

15. The potential for improper disclosure and theft of Plaintiffs' and Class Members' PII was a known risk to Coinbase, and thus Coinbase was on notice that failing to take necessary steps to secure the PII it left vulnerable to an attack.

16. Upon information and belief, Coinbase failed to properly monitor and implement adequate data security practices with regard to its computer network and systems that contain Plaintiffs' and Class Members' PII. Had Coinbase properly monitored its networks and servers and implemented adequate data security practices, it could have prevented the Data Breach or, at the very least, discovered the Data Breach sooner.

17. Plaintiffs' and Class Members' identities are now at a current, imminent, and ongoing risk of fraud and identity theft because of Coinbase's negligent conduct, which led to the PII that it collected and maintained falling into the hands of data thieves and other unauthorized third parties.

18. The risk of identity theft is not speculative or hypothetical but is impending and has materialized as there is evidence that the Plaintiffs' and Class Members' PII was targeted, accessed, has been misused, and disseminated on the dark web.

19. Plaintiffs and Class Members must now closely monitor their financial accounts to guard against future identity theft and fraud. Plaintiffs and Class Members have heeded such

warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts include and will continue to include in the future, among other things: (a) reviewing financial statements; (b) changing passwords; and (c) signing up for credit and identity theft monitoring services. The loss of time and other mitigation costs are tied directly to guarding against the imminent risk of identity theft.

20. Plaintiffs and Class Members have suffered numerous actual and concrete injuries as a direct result of the Data Breach, including: (a) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) financial costs incurred due to actual identity theft; (d) loss of time incurred due to actual identity theft; (g) deprivation of value of their PII; and (h) the continued risk to their sensitive PII, which remains in the possession of Defendants, and which is subject to further breaches, so long as Coinbase fails to undertake appropriate and adequate measures to protect PII it collected and maintained.

21. Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed and exfiltrated during the Data Breach.

## PARTIES

22. Plaintiff Benjamin Neu is, and at all times mentioned herein was, an individual citizen of the State of Wisconsin residing in Washington County, Wisconsin. Plaintiff Neu is a current customer of Coinbase.

23. Plaintiff Keefe John is, and at all times mentioned herein was, an individual citizen of the State of Wisconsin residing in Washington County, Wisconsin. Plaintiff Keefe is a current customer of Coinbase.

24. Defendant Coinbase Global, Inc. is a Delaware corporation that purports to have no principal place of business and is a "remote-first company."[7] However, Coinbase maintains

[7] *Post COVID-19, Coinbase Will be a Remote-First Company*, https://www.coinbase.com/blog/post-covid-19-coinbase-will-be-a-remote-first-company (last accessed Mar. 15, 2025).

its principal office and business records in San Francisco, where its executives direct, control, and coordinate its corporate operations.[8]

25. Defendant Coinbase, Inc., is a wholly owned subsidiary of Coinbase Global, Inc., and operates the Coinbase platform.

## JURISDICTION AND VENUE

26. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom including Plaintiffs have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

27. This Court has personal jurisdiction over Defendant because Coinbase solicits customers and transacts substantial business in California. Plaintiffs are also informed and believe, and therefore allege that acts and omissions giving rise to this action occurred in California.

28. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District. Specifically, Coinbase executives control the direction of the company in the Northern District of California, and Coinbase's business records are located primarily in this District.

29. Pursuant to Local Rule 3-2(d), this matter is properly assigned to the San Francisco Division of this district because Plaintiff is informed and believes, and thereon alleges, that this action arose in San Francisco, California.

## FACTUAL ALLEGATIONS

### A. Coinbase's Business and Collection of Plaintiffs' and Class Members' PII

30. In the course of doing business, Coinbase acquires a significant amount of highly sensitive and valuable private information from prospective and current customers, including the acquisition of the PII of Plaintiffs and Class members.

[8] *See, e.g., Coinbase Legal FAQs*, https://www.coinbase.com/legal/us

31. As a condition of receiving this PII, Plaintiffs and Class members entrusted that Coinbase would only use their data for business purposes in a manner that was safe and secure.

32. By obtaining, collecting, using, and deriving a benefit from Plaintiffs and Class members' PII, Coinbase assumed legal and equitable duties and knew or should have known that it was responsible for ensuring the safety and security of Plaintiffs and Class members' PII and to protect such PII from unauthorized disclosure and exfiltration.

33. Plaintiffs and Class members relied on Coinbase to keep their PII confidential and only to make authorized disclosures of this PII, which Coinbase failed to do.

**B. <u>The Data Breach</u>**

34. As described herein, on May 11, 2025, a threat actor informed Coinbase that they obtained the PII of countless Coinbase customers (the "Data Breach").

35. To illustrate the enormous magnitude of the Data breach, it is notable that, in its May 15, 2025 filing with the SEC, Coinbase stated that it preliminarily estimates that it might incur expenses of between $180 million and $400 million relating to remediation and other costs as a result of the Data Breach.

36. Not only do Plaintiffs and Class members have to contend with the harms caused by the Data Breach, but Coinbase's response has been woefully insufficient.

37. On information and belief, the PII compromised in the files accessed by hackers was not encrypted. This can also be inferred given that the hackers were able to access the PII listed above.

38. The removal of PII from Coinbase's systems demonstrates that this cyberattack was targeted due to Coinbase's status as a well-known cryptocurrency business that houses sensitive PII. Armed with this PII, data thieves (as well as downstream purchasers of the stolen PII), can commit a variety of crimes, including: opening new financial accounts in Class members' names, taking out loans in Class members' names, using Class members' information to obtain government benefits, filing fraudulent tax returns using Class members' tax identification

information, obtaining driver's licenses in Class members' names but with a different photograph, and giving false information to police during an arrest.

39. Due to Coinbase's flawed security measures and Coinbase's incompetent response to the Data Breach, Plaintiffs and Class members now face a present, substantial, and imminent risk of fraud and identity theft and must deal with that threat forever.

40. Despite widespread knowledge of the dangers of identity theft and fraud associated with cyberattacks and unauthorized disclosure of PII, and despite Coinbase's large operating budget, Coinbase provided unreasonably deficient protections prior to the Data Breach, including but not limited to a lack of security measures for storing and handling PII, as well as inadequate employee training regarding how to access, oversee the protection of, and handle and safeguard this sensitive set of information.

41. Coinbase failed to adequately adopt and train its employees on even the most basic of information security protocols, including storing, locking, encrypting and limiting access to current and former consumers and employees' highly sensitive PII; implementing guidelines for accessing, maintaining, and communicating sensitive PII; and protecting sensitive PII by implementing protocols on how to utilize such information.

42. Coinbase' failures caused the unpermitted disclosure of Plaintiffs' and Class members' PII to an unauthorized third-party cybercriminal and put Plaintiffs and Class members at serious, immediate, and continuous risk of identity theft and fraud.

43. The Data Breach that exposed Plaintiffs' and Class members' PII was caused by Coinbase's violation of its obligations to abide by best practices and industry standards concerning its information security practices and processes.

44. Coinbase, despite being a technologically advanced organization, failed to comply with basic security standards or to implement security measures that could have prevented or mitigated the Data Breach.

45. Coinbase failed to ensure that all personnel with access to its current/former actual and prospective students' PII were properly trained in retrieving, handling, using and distributing

sensitive information. This means that personnel are trained to apply relevant updates and software patches, as Coinbase should have done here

46. Coinbase's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

47. Coinbase knew or should have known that its electronic records would be targeted by cybercriminals.

**C. <u>The Data Breach Was Foreseeable</u>**

48. Coinbase has weighty obligations created by industry standards, common law, and its own promises and representations to keep PII confidential and to protect from unauthorized access and disclosure.

49. Plaintiffs and Class members provided their PII to Coinbase with the reasonable expectation and mutual understanding that Coinbase would comply with its obligations to keep such information confidential and secure from unauthorized access.

50. Coinbase's data security obligations were particularly acute given the substantial increase in ransomware attacks and/or data breaches in various industries – including financial institutions – preceding the date of the Data Breach.

51. Coinbase was aware of the risk of data breaches because such breaches have dominated the headlines in recent years.

52. PII, like the PII targeted by the hackers in this Action, is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used in a variety of unlawful manners. PII can be used to distinguish, identify or trace an individual's identity. This can be accomplished alone or in combination with other personal or identifying information that is connected or linked to an individual, such as the information compromised in the Data Breach.

53. Given the nature of the Data Breach, it is foreseeable that the compromised PII can be used by hackers and cybercriminals in a variety of different ways.

54. Cybercriminals who possess Class members' PII can (in tandem with other information) obtain Class members' tax returns or open fraudulent credit card or other types of accounts in Class members' names.

55. The increase in such attacks, and attendant risk of future attacks, was widely known.

56. As such, this specific Data Breach was foreseeable. Defendants were cognizant of data breaches because of how common and high-profile data breaches have become with respect to consumer-facing businesses, such as Coinbase.

**D. <u>Coinbase Failed to Comply with FTC Guidelines and Industry Standards</u>**

57. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

58. In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

59. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex

passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

60. Several best practices have been identified that, at a minimum, should be implemented by consumer-facing businesses such as Coinbase, include but are not limited to: educating all employees about cyber security; requiring strong passwords; maintaining multi-layer security, including firewalls, anti-virus, and anti-malware software; utilizing encryption; making data unreadable without a key; implementing multi-factor authentication; backing up data; and limiting which particular employees can access sensitive data. Other best cybersecurity practices that are standard in the industry include installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; and training staff regarding critical points

61. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

62. As evidenced by the Data Breach, Coinbase failed to properly implement basic data security practices. Coinbase's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

63. Coinbase was at all times fully aware of its obligation to protect the PII of its customers yet failed to comply with such obligations. Coinbase was also aware of the significant repercussions that would result from its failure to do so.

64. As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

65. Some industry best practices that should be implemented by businesses dealing with sensitive PII like Coinbase include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

66. Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

67. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

68. Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**E. <u>Coinbase Breached its Duty to Safeguard Plaintiffs' and Class Members' PII</u>**

69. In addition to its obligations under federal and state laws, Coinbase owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession from being compromised, lost,

stolen, accessed, and misused by unauthorized persons. Coinbase owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII of Class Members

70. Coinbase breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems, servers and data. Coinbase's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect its customers' PII;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to sufficiently train its employees regarding the proper handling of its customers' PII;

e. Failing to adequately oversee employees and third-party vendors;

f. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA; and

g. Otherwise breaching its duties and obligations to protect Plaintiffs' and Class Members' PII.

71. Coinbase negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' PII by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted PII.

72. Had Coinbase remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiffs' and Class Members' confidential PII.

73. Accordingly, Plaintiffs' and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased

risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiffs and Class Members also lost the benefit of the bargain they made with Coinbase.

### F. <u>Coinbase Should Have Known that Cybercriminals Target PII to Carry Out Fraud and Identity Theft</u>

74. The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiffs and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[9] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

75. Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

76. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

---

[9] *FTC Information Injury Workshop, BE and BCP Staff Perspective* (October 2018), https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited Mar. 15, 2025).

77. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

78. Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiffs' and Class Members' PII to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiffs and Class Members.

79. For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[10] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

80. Identity thieves can also use stolen personal information such as Social Security numbers and other PII for a variety of crimes, including financial identity theft, credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information.

81. PII is also especially valuable to identity thieves. Identity thieves can use PII to commit an array of crimes, including identity theft and financial fraud.

82. Indeed, a robust cyber black market exists in which criminals openly post stolen PII on multiple underground Internet websites, commonly referred to as the dark web.

---

[10] *See* FTC, *IdentityTheft.gov,* https://www.identitytheft.gov/Steps (last visited May 15, 2025).

83. The ramifications of Coinbase's failure to keep its customers' PII secure are long-lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

84. The value of PII is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the PII compromised here has considerable market value.

85. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[11]

86. It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[12]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

87. PII are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

88. As a result, Plaintiffs and Class Members are at an increased risk of fraud and identity theft, including financial identity theft, for many years into the future. Thus, Plaintiffs

---

[11] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited May 15, 2025).

[12] GAO,*Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/assets/270/262904.html

and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

### G. Harm to Plaintiffs and the Class

89. Plaintiffs suffered actual injury from having their PII compromised as a result of the Data Breach including, but not limited to (a) misuse of their compromised PII; (b) damage to and diminution in the value of their PII, a form of property that Defendants obtained from Plaintiffs; (c) violation of their privacy, including the compromise of highly sensitive PII; (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud; and (e) actual and potential out-of-pocket losses including the loss of time.

90. As a result of the Data Breach, Plaintiffs anticipate spending considerable time and money on an ongoing basis to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and protecting themselves from financial fraud.

91. As a result of the Data Breach, Plaintiffs have suffered anxiety as a result of the release of their PII, which they believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using their PII for purposes of committing cyber and other crimes against her including, but not limited to, fraud and identity theft. Plaintiffs are very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on their life.

92. Plaintiffs have a continuing interest in ensuring that their PII, which remains in the possession of Coinbase, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

93. Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rule of Civil Procedure, on behalf of the following Nationwide Class, subject to amendment as appropriate:

> **Nationwide Class:** All individuals whose PII was maintained by Coinbase which was compromised in the Data Breach.

94. Excluded from the Class are Coinbase and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

95. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

96. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

97. Numerosity. The Class Members are so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective Class Members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of Class Members are ascertainable through Coinbase's and its customers' records, including but not limited to, the files implicated in the Data Breach.

98. Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Coinbase engaged in the conduct alleged herein;

b. When Coinbase learned of the Data Breach;

c. Whether Coinbase's response to the Data Breach was adequate;

d. Whether Coinbase unlawfully lost or disclosed Plaintiffs' and Class Members' PII;

e. Whether Coinbase failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

f. Whether Coinbase's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether Coinbase's data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether Coinbase owed a duty to Class Members to safeguard their PII;

i. Whether Coinbase breached its duty to Class Members to safeguard their PII;

j. Whether hackers obtained Class Members' PII via the Data Breach;

k. Whether Coinbase had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

l. Whether Coinbase breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

m. Whether Coinbase knew or should have known that its data security systems and monitoring processes were deficient;

n. What damages Plaintiffs and Class Members suffered as a result of Coinbase's misconduct;

o. Whether Coinbase's conduct was negligent;

p. Whether Coinbase was unjustly enriched;

q. Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

r. Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

s. Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

99. Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class Member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class

Members were injured through the common misconduct of Coinbase. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiffs individually. The claims of Plaintiffs and those of Class Members arise from the same operative facts and are based on the same legal theories.

100. Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

101. Predominance. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that Plaintiffs' and Class Members' PII was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

102. Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Coinbase. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

103. Finally, all members of the proposed Class are readily ascertainable. Coinbase has access to the names and addresses and/or email addresses of Class Members affected by the Data

Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Coinbase.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On behalf of Plaintiffs and the Nationwide Class)

104. Plaintiffs restate and reallege all of the allegations in every preceding paragraph as if fully set forth herein.

105. Coinbase knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

106. Coinbase knew or should have known of the risks inherent in collecting the PII of Plaintiffs and Class Members and the importance of adequate security. Coinbase was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

107. Coinbase owed a duty of care to Plaintiffs and Class Members whose PII was entrusted to it. Coinbase's duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting PII in its possession;

b. To protect its customers' PII using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of PII in its possession;

d. To employ reasonable security measures and otherwise protect the PII of Plaintiffs and Class Members pursuant to federal and state regulations including but not limited to the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiffs and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

108. Coinbase's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

109. Coinbase's duty also arose because as a service provider Defendant was bound by industry standards to protect its customers' confidential PII.

110. Coinbase holds itself out as a trusted data collector, and thereby assumes a duty to reasonably protect its customers' information. Indeed, Defendant, as a direct data collector, was in a unique and superior position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

111. Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Coinbase owed them a duty of care to not subject them to an unreasonable risk of harm.

112. Coinbase, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within Coinbase's possession.

113. Coinbase, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiffs and Class Members.

114. Coinbase, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose PII was compromised.

115. Coinbase breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Failing to properly supervise its employees and third-party vendors;

e. Allowing unauthorized access to Plaintiffs' and Class Members' PII;

f. Failing to comply with the FTCA; and

g. Failing to detect in a timely manner that Class Members' PII had been compromised.

116. Coinbase had a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to entrust Coinbase with their PII was predicated on the understanding that Coinbase would take adequate security precautions. Moreover, only Coinbase had the ability to protect its systems (and the PII that it stored on them) from attack.

117. Coinbase's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised, exfiltrated, and/or misused, as alleged herein.

118. As a result of Coinbase's ongoing failure to notify Plaintiffs and Class Members regarding exactly what PII has been compromised, Plaintiffs and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

119. Coinbase's breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class Members of identity theft, loss of control over their PII, and/or loss of time and money to monitor their accounts for fraud.

120. As a result of Coinbase's negligence in breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes.

121. As a direct and proximate result of Coinbase's negligent conduct, Plaintiffs and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

122. The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

123. Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

124. In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Coinbase to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiffs and the Nationwide Class)**

125. Plaintiffs restate and reallege the allegations in every preceding paragraph as if fully set forth herein.

126. Coinbase provides financial services to Plaintiffs and Class Members. Plaintiffs and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiffs and Class Members paying for services from Defendant.

127. Through Defendant's provision of financial services, it knew or should have known that it must protect Plaintiffs' and Class Members' confidential PII in accordance with Coinbase's policies, practices, and applicable law.

128. As consideration, Plaintiffs and Class Members paid money to Coinbase and turned over valuable PII to Coinbase. Accordingly, Plaintiffs and Class Members bargained with Coinbase to securely maintain and store their PII.

129. Defendant solicited, offered and invited Plaintiffs and Class members to provide their PII as part of Coinbase's regular business practices. Plaintiffs and Class Members accepted Defendant's offers and provided their PII to Coinbase.

130. Coinbase accepted possession of Plaintiffs' and Class Members' PII for the purpose of providing financial services to Plaintiffs and Class Members.

131. In delivering their PII to Coinbase and paying for financial services, Plaintiffs and Class Members intended and understood that Coinbase would adequately safeguard the PII as part of that service.

132. Defendant's implied promises to Plaintiffs and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to PII also protect the confidentiality of that data; (2) taking steps to ensure that the PII that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the PII against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with FTC and industry standards to make sure that Plaintiffs' and Class Members' PII would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

133. Plaintiffs and Class Members would not have entrusted their PII to Coinbase in the absence of such an implied contract.

134. Had Coinbase disclosed to Plaintiffs and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and Class Members would not have provided their PII to Coinbase.

135. As a provider of financial-related services, Coinbase recognized (or should have recognized) that Plaintiffs' and Class Member's PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the other Class Members.

136. Coinbase violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' PII. Coinbase further breached these implied contracts by failing to comply with its promise to abide by the FTC and industry standards.

137. Coinbase further breached the implied contracts with Plaintiffs and Class Members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard

138. .

139. Coinbase further breached the implied contracts with Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' PII.

140. A meeting of the minds occurred, as Plaintiffs and Class Members agreed, *inter alia*, to provide accurate and complete PII and to pay Coinbase in exchange for Coinbase's agreement to, *inter alia*, protect their PII.

141. Plaintiffs and Class Members have been damaged by Coinbase's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Nationwide Class)**

142. Plaintiffs restate and reallege the allegations in every preceding paragraph as if fully set forth herein.

143. This cause of action is pleaded in the alternative to Plaintiffs' second and third causes of action above.

144. Plaintiffs and Class Members conferred a benefit on Coinbase by turning over their PII to Defendant and by paying for financial services that should have included cybersecurity protection to protect their PII. Plaintiffs and Class Members did not receive such protection.

145. Upon information and belief, Coinbase funds its data security measures entirely from its general revenue, including from payments made to it by Plaintiffs and Class Members (or on their behalf).

146. As such, a portion of the payments made by Plaintiffs and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Coinbase.

147. Coinbase has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiffs and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

148. Coinbase knew that Plaintiffs and Class Members conferred a benefit upon it, which Coinbase accepted. Coinbase profited from these transactions and used the PII of Plaintiffs and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiffs' and Class Members' PII and prevented the Data Breach.

149. If Plaintiffs and Class Members had known that Coinbase had not adequately secured their PII, they would not have agreed to provide such PII to Defendant.

150. Due to Coinbase's conduct alleged herein, it would be unjust and inequitable under the circumstances for Coinbase to be permitted to retain the benefit of its wrongful conduct.

151. As a direct and proximate result of Coinbase's conduct, Plaintiffs and Class Members have suffered and/ or are at a continual substantial and imminent risk of suffering, injury, including but not limited to: (i) identity theft; (ii) the loss of the opportunity to control how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to

prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remains in Coinbase's possession and is subject to further unauthorized disclosures so long as Coinbase fails to undertake appropriate and adequate measures to protect PII in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

152. Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Coinbase and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Coinbase from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

153. Plaintiffs and Class Members may not have an adequate remedy at law against Coinbase, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## FOURTH CAUSE OF ACTION
## BREACH OF CONFIDENCE
**(On behalf of Plaintiffs and the Nationwide Class)**

154. Plaintiffs restate and reallege the allegations in every preceding paragraph as if fully set forth herein.

155. Plaintiffs and Class Members have an interest, both equitable and legal, in the PII about them that was conveyed to, collected by, and maintained by Coinbase and ultimately accessed and acquired in the Data Breach.

156. As a financial service provider, Coinbase has a special relationship with its customers, including Plaintiffs and Class Members. Because of that special relationship, Coinbase was provided with and stored Plaintiffs' and Class Members' PII and had a duty to maintain such Information in confidence.

157. Patients like Plaintiffs and Class Members have a privacy interest in personal financial and other matters, and Coinbase had a duty not to disclose such matters concerning its customers.

158. As a result of the parties' relationship, Coinbase had possession and knowledge of highly sensitive and confidential PII belonging to Plaintiffs and Class Members, information that was not generally known.

159. Plaintiffs and Class Members did not consent nor authorize Defendant to release or disclose their PII to an unknown criminal actor.

160. Coinbase breached its duty of confidence owed to Plaintiffs and Class Members by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of Plaintiffs' and Class Members' PII; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the Breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its customers; and (h) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class Members' PII to a criminal third party.

161. But for Coinbase's wrongful breach of its duty of confidence owed to Plaintiffs and Class Members, their PII would not have been compromised.

162. As a direct and proximate result of Coinbase's wrongful breach of its duty of confidence, Plaintiffs and Class Members have suffered and will continue to suffer the injuries alleged herein.

163. It would be inequitable for Coinbase to retain the benefit of controlling and maintaining Plaintiffs' and Class Members' PII at the expense of Plaintiffs and Class Members.

164. Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(On behalf of Plaintiffs and the Nationwide Class)**

165. Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

166. In providing their PII to Defendant, Plaintiffs and Class Members justifiably placed a special confidence in Defendant to act in good faith and with due regard for the interests of Plaintiffs and Class Members to safeguard and keep confidential that PII.

167. As a financial service provider, Defendant has a fiduciary relationship to its customers like Plaintiffs and Class Members.

168. Because of that fiduciary relationship, Coinbase was provided with and stored valuable and sensitive PII belonging to Plaintiffs and Class Members, which it was required to maintain in confidence.

169. Defendant accepted the special confidence Plaintiffs and Class Members placed in it.

170. In light of the special relationship between Defendant, Plaintiffs, and Class Members, whereby Defendant became a guardian of Plaintiffs' and Class Members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for the benefit of its customers, including Plaintiffs and Class Members for the safeguarding of Plaintiffs and Class Members' PII.

171. Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of its customer relationships, in particular, to keep secure the PII of its customers, exercise utmost care in protecting the PII in its possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons, and to timely notify Plaintiffs and Class Members of a data breach and disclosure.

172. Plaintiffs and Class Members have a privacy interest in their PII.

173. Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to protect the integrity of the systems containing Plaintiffs' and Class Members' PII.

174. Defendant breached its fiduciary duties to Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs and Class Members' PII and by failing to timely notify and/or warn Plaintiffs and Class Members of the Data Breach.

175. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to:

a. The compromise, publication, and/or theft of their PII;

b. Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII;

c. Lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft;

d. The continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession;

e. Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and

f. The diminished value of the services they paid for and received.

176. As a direct and proximate result of Coinbase's breaches of its fiduciary duties, Plaintiffs and Class Members will suffer other forms of injury and/or harm, and other economic and non-economic losses.

**SIXTH CAUSE OF ACTION**
**BAILMENT**
**(On behalf of Plaintiffs and the Class)**

177. Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

178. Defendant acquired and was obligated to safeguard the PII of Plaintiffs and Class Members.

179. Defendant accepted possession and took control of Plaintiffs' and Class Members' PII under such circumstances that the law imposes an obligation to safeguard the property of another.

180. Specifically, a constructive bailment arises when Defendant, as is the case here, takes lawful possession of the property of another and has a duty to account for that property, without intending to appropriate it.

181. Constructive bailments do not require an express assumption of duties and may arise from the bare fact of the thing coming into the actual possession and control of a person fortuitously, or by mistake as to the duty or ability of the recipient to affect the purpose contemplated by the absolute owner.

182. During the bailment, Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care, diligence and prudence in protecting their PII.

183. Defendant breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class Members' PII, resulting in the unlawful and unauthorized access to and misuse of such Information.

184. Defendant further breached its duty to safeguard Plaintiffs' and Class Members' PII by failing to notify them individually in a timely and accurate manner that their PII had been breached and compromised.

185. As a direct and proximate result of Defendant's breach of duty, Plaintiffs and Class Members have suffered compensable damages that were reasonably foreseeable to Defendant, including but not limited to, the damages set forth herein.

**SEVENTH CAUSE OF ACTION**
**INVASION OF PRIVACY**
**(On behalf of Plaintiffs and the Nationwide Subclass)**

186. Plaintiffs restate and reallege the allegations in every preceding paragraph as if fully set forth herein.

187. Plaintiffs and Class Members had a reasonable expectation of privacy in the PII Defendant mishandled.

188. As a result of Defendant's conduct, publicity was given to Plaintiffs' and Class Members' PII, which necessarily includes matters concerning their private life such as PII.

189. A reasonable person of ordinary sensibilities would consider the publication of Plaintiffs' and Class Members' PII to be highly offensive.

190. Plaintiffs' and Class Members' PII is not of legitimate public concern and should remain private.

191. As a direct and proximate result of Defendant's public disclosure of private facts, Plaintiffs and Class Members are at a current and ongoing risk of identity theft and sustained compensatory damages including: (a) invasion of privacy; (b) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (d) financial "out of pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) diminution of value of their PII; (h) future costs of identity theft monitoring; (i) anxiety, annoyance and nuisance, and (j) the continued risk to their PII, which remains in Defendant's possession, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' PII.

192. Plaintiffs and Class Members are entitled to compensatory, consequential and nominal damages suffered as a result of the Data Breach.

193. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, (i) strengthen its data security systems and monitoring procedures;

(ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes described above, request judgment against Coinbase and that the Court enter an order:

a. Certifying this action as a Class action, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper and adequate representatives of the Class requested herein;

b. Awarding Plaintiffs and Class Members appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. Awarding injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. Instructing Coinbase to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e. Requiring Coinbase to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. Requiring Coinbase to implement enhanced data security measures in order to better protect the PII in its possession and control;

g. Awarding Plaintiffs and Class Members prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

h. Awarding such other and further relief as this Court may deem just and proper.

///

///

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues.

Dated: May 16, 2025

/s/ *Matthew J. Langley*
Matthew J. Langley (California Bar No. 342846)
David S. Almeida*
Elena Belov*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
T: (708) 529-5418
matt@almeidalawgroup.com
david@almeidalawgroup.com
elena@almeidalawgroup.com

**Pro Hac Vice* forthcoming

*Counsel for Plaintiffs & the Proposed Class*